IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEGWAY INC., DEKA PRODUCTS LIMITED PARTNERSHIP, and NINEBOT (TIANJIN) TECHNOLOGY CO., LTD., <br><br>      Plaintiffs, <br><br>v. <br><br>INVENTIST, INC., <br><br>      Defendant. | ) ) ) ) ) ) ) ) ) Civ. No. 15-808-SLR ) ) ) ) ) |

**MEMORANDUM ORDER**

At Wilmington this 25th day of April, 2016, having reviewed the motion filed by defendant Inventist, Inc. to dismiss for lack of jurisdiction over the person or, in the alternative, to transfer venue to the Western District of Washington, and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 17) is granted in part and denied in part, for the reasons that follow:

1. **Background.** On September 11, 2015, plaintiffs[1] filed the instant lawsuit alleging that defendant Inventist, Inc. ("defendant") infringes multiple patents regarding discrete aspects of personal transport devices. On November 16, 2015, plaintiffs amended their complaint ("FAC"), to which defendant has responded with a motion to

---

[1] Segway Inc. ("Segway"), DEKA Products Limited Partnership ("DEKA"), and Ninebot (Tianjin) Technology Co., Ltd. ("Ninebot") (collectively, "plaintiffs").

dismiss or transfer. The FAC contains the following assertions related to the court's exercise of personal jurisdiction over defendant:

> Inventist is subject to personal jurisdiction in this District because it has conducted and does conduct business within the United States and the State of Delaware. Inventist, directly or through intermediaries (including distributors, retailers, and others) ships, distributes, offers for sale, sells, and advertises products that infringe the patent claims involved in this action in this District. Inventist has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in this District. Inventist sought protection and benefit from the laws of the State of Delaware by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

(D.I. 16, ¶ 7) The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 1338(a).

2. **The parties.** Plaintiff Segway is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in New Hampshire. Segway is an innovative technology company that designs, develops, manufactures, distributes, and services patented personal transporters that have been publicly sold in the United States since 2002. DEKA is a limited partnership organized and existing under the laws of the State of New Hampshire, having a principal place of business in New Hampshire. DEKA's sole general partner is DEKA Research & Development Corporation, a New Hampshire corporation that focuses on research and development of innovative technologies, including certain technologies on which Segway's patented personal transporters are based. Plaintiff Ninebot is a corporation organized and existing under the laws of the People's Republic of China, having a principal place of business in Tianjin, China. Ninebot manufactures personal

transporters under the "Ninebot" brand name. (D.I. 16, ¶¶ 1-3) Defendant is a Washington corporation, with its principal place of business in Washington.

3. **The record.** The record submitted by the parties in connection with the pending motion includes the following: Defendant is in the business of designing and manufacturing products such as the accused personal transporter devices. Defendant employs six full-time (and three part-time) employees, all of whom are located in Washington, as are its corporate records. Defendant consults with engineers located in China; its product design is done in Washington and China, and its manufacturing is done in China. Defendant has no ties to Delaware save for its commercial activity, described below. (D.I. 19)

4. Defendant maintains an interactive, commercial website store that is accessible to the general public and through which the general public (including Delaware residents) can purchase the accused products. (D.I. 12, exs. A-C) At least three products have been sold and shipped through this avenue of commerce[2] to consumers located in Delaware. The general public (including Delaware residents) can also purchase the accused products through Amazon.com's website at http://www.amazon.com, and on Brookstone's website at http://www.brookstone.com. (*Id.*, exs. E-H) Defendant has posted on its internet blog that large, well-known department stores, including Toys R Us, Nordstrom, Brookstone, Target, Sears, and

---

[2]That these sales were made to plaintiffs' representatives located in Delaware does not detract from the fact that defendant's website is accessible to (and operable for) Delaware residents, and that defendant's commercial efforts are directed to a national audience, not excluding Delaware.

3

Kmart, will sell defendant's products "across the United States."[3] (*Id.*, ex. O) Defendant's advertising and promotional efforts are directed to a national audience. (*Id.*, ex. P-V, X) The founder and owner of defendant has pursued litigation to protect his intellectual property rights in the accused products against various parties in various locations, including suits in the Central District of California and in China. (*Id.*, exs. I-N, W)

    5. **Personal jurisdiction.** Rule 12(b)(2) of the Federal Rules of Civil Procedure directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

    6. To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one

---

    [3]All of these retailers have stores located in Delaware.

constitutional. See id. at 66; Reach & Assocs. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. See Reach & Assocs., 269 F. Supp. 2d at 502. The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. See id.; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

7. Pursuant to the relevant portions of Delaware's long-arm statute, 10 Del. C. § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del. C. § 3104(c)(1)-(4). With the exception of (c)(4), the long-arm statute requires a showing of specific jurisdiction. See Shoemaker v. McConnell, 556 F. Supp. 2d 351, 354, 355 (D. Del. 2008).[4]

8. If defendant is found to be within the reach of the long-arm statute, the court

---

[4]Subsection (4) confers general jurisdiction, the contours of which were addressed recently by the Delaware Supreme Court in Genuine Parts Co. v. Cepac, No. 528, 2015, 2016 WL 1569077 (Del. April 18, 2016).

then must analyze whether the exercise of personal jurisdiction comports with due process, to wit, whether plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum State. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

9. I have recognized the "dual jurisdiction" or "stream-of-commerce" analytical framework as a basis for specific personal jurisdiction under Delaware law. *See Intellectual Ventures I LLC v. Ricoh Co., Ltd.*, 67 F. Supp. 3d 656 (D. Del. 2014) and *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260 (D. Del. 2010). *Accord Robert Bosch LLC v. Alberee Products, Inc.*, 70 F. Supp. 3d 665 (D. Del. 2014). Under this theory, it is plaintiffs' burden to demonstrate that: (1) defendant has an intent to serve the Delaware market; (2) this intent results in the introduction of the accused product into Delaware; and (3) plaintiffs' cause of action arises from injuries caused by sale of the accused products in Delaware. *See Belden,* 829 F. Supp. 2d at 267-68; *Bosch*, 70 F. Supp. 3d at 674.

10. Under the construct discussed in *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1158 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998), "the touchstone of dual jurisdiction analysis is intent and purpose to serve the Delaware market." *Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 372 (D. Del. 2008); *see*

*Boone,* 724 A.2d at 1158. In this regard, "[a] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations, Inc.,* 547 F. Supp. 2d at 373.

11. In addition to demonstrating that defendant's conduct falls within the scope of Delaware's long-arm statute, plaintiffs must also demonstrate that exercising personal jurisdiction over defendant passes constitutional muster under the Due Process Clause of the Fourteenth Amendment. For the constitutional dimension to add anything of substance to the jurisdictional inquiry, one looks to Justice O'Connor's plurality opinion in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102 (1987). Rejecting the more liberal approach taken by Justice Brennan (also writing for four justices),[5] the O'Connor plurality in *Asahi* held that

> [t]he "substantial connection" . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by **an action of the defendant purposefully directed toward the forum State."** . . . The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act

---

[5]"[J]urisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" for, "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi,* 480 U.S. at 117.

purposefully directed toward the forum State.

*Id.* at 112 (emphasis in original).[6]

12. I conclude that plaintiffs have satisfied their burden to prove that defendant has purposefully directed commercial activities toward the State of Delaware. The record unquestionably demonstrates the international scope of defendant's commercial aspirations. Defendant promotes itself on a national, if not international, scale, and has described its target market as including national retail chains that have locations in Delaware, as well as national internet retailers. Most significantly, defendant does not just maintain an informational website, but maintains an interactive website through which the accused products can be purchased, including by consumers located in Delaware. The record presented by plaintiffs demonstrates that defendant has an intent to serve the Delaware market, the accused products have been introduced into the Delaware market through the stream of commerce, and the cause of action at bar is related to injuries caused by the introduction of such products into the Delaware market. The breadth of defendant's promotional efforts belie any assertions that defendant should not reasonably anticipate being haled into court in Delaware. Defendant's motion to dismiss is denied.

13. **Transfer.** Defendant moves to transfer this action to the Western District of Washington, where it maintains its headquarters. The analytical framework for motions

---

[6]The court in *Boone* adopted this test. 724 A.2d at 1159 and n.4. Although in a different factual context, the Federal Circuit recently held that "a defendant's planned, non-speculative harmful conduct" as evidenced, e.g., through the filing of an Abbreviated New Drug Application, passed constitutional muster. *See Acorda Therapeutics Inc. v. Mylan Pharmaceuticals Inc.*, 2016 WL 1077048, *6 (Fed. Cir. March 18, 2016).

to transfer pursuant to 28 U.S.C. § 1404(a) are well known and will not be repeated here. See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221 (Fed. Cir. 2011); Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995); Helicos Biosciences Corp v. Illumina, Inc., 858 F. Supp. 2d 367 (D. Del. 2012). I have gleaned the following from the above case law: A plaintiff, as the injured party, has the privilege of initiating its litigation in the forum it chooses. A defendant's place of incorporation is always an appropriate forum in which to bring suit. The purpose of § 1404(a) is not to usurp plaintiff's choice, but to give courts the discretion to transfer if the interests of justice so dictate. The Third Circuit in Jumara gave the courts some factors to balance in making their determination, keeping the above tenets in mind. The Jumara factors should be viewed through a contemporary lens. In this regard, I have declined to transfer based on the location of potential witnesses and of books and records, as discovery is a local event[7] and trial is a limited event.[8] With respect to the factor related to "administrative difficulty from court congestion," the case management orders always start with the schedules proposed by the litigators. It has been my experience that most litigators

---

[7]Depositions generally are taken where the deponents reside, and books and records generally are kept in a digital format and easily transferable. To the extent that defendant's books and records are kept in "physical form" (hard to believe in this day and age), it would be the opposing party's burden to travel for an inspection and/or to pay for copies.

[8]According to national statistics, less than 13.9 % of patent infringement cases resolve on the merits. Howard, Brian, The Truth About Patent Damage Awards, Law360 (Oct. 16, 2014) (patent cases filed between 2000 and 2013); Morgan, Paul, Microsoft v. i4i - Is the Sky Really Falling?, PatentlyO (Jan. 9, 2011) ("[M]ore than 97% of patent suits are settled before trial with no judicial validity test."); Denlow, Morton, Hon. Ret., Magistrate Judges' Important Role in Settling Cases, The Federal Lawyer, 101 (May/June 2014) ("In 2012, less than 2 percent of federal civil cases went to trial.").

(especially those representing defendants) are in no hurry to resolve the dispute. If there is a need to expedite proceedings, that need is accommodated. In sum, this factor generally is neutral.

14. Defendant suggests that Delaware is an arbitrary or irrational choice, or one selected to impede the efficient and convenient progress of the case. I disagree, as Delaware is an appropriate[9] and "neutral" forum with experience in patent litigation located such that the "inconveniences" of litigation do not rest solely with any one party. Nevertheless, the facts of this case persuade me that transfer is to the Western District of Washington is warranted. Although defendant clearly has global aspirations, those aspirations are more reflected in its promotional materials than its physical or fiscal presence in Delaware. At this moment, then, I am persuaded that defendant is accurately characterized as a regional enterprise for whom litigating in Delaware will impose an unreasonable burden.

_____
United States District Judge

---

[9]Given plaintiff Segway's incorporation in Delaware and the court's ability to exercise personal jurisdiction over defendant.